Good morning, Your Honours. I am pleased to quote. This case is about this mechanism to stabilize the catheter in a ritual reflex configuration. Actually, the facts is actually pretty clear. One paragraph relied on is the paragraph which says that the image assembly includes a mechanism that can fix the position and such a mechanism may include blah blah blah mechanical engagement arrangements. The second piece of evidence relied on by the board is the definition from the dictionaries of engagement. Basically, the board relied on the definition being something come together interlocking. Even if you're right that Bayer doesn't expressly say that that mechanism encompasses the precise kind of mechanism that you're claiming, the board has an obviousness determination as well as an anticipation. Well, you see the key is that the board made the obvious determination based on no evidence, much less substantial evidence. You see, the teaching of the prior is focusing on the stabilization element is attached to the catheter side. But on the other side, right, which is the second engagement element. Not only the prior that says nothing about it, but the contest in the prior clearly suggests that it's relying on the wall on the inner surface of the channel to fix the position. And also, one thing is pretty clear from the teaching is that in the contest is that the mechanical engagement is only with respect to the end of the catheter. Because if you look at it around the surrounding scheme we discussed, like balloon, like the spring, it's only with respect to the end that is attached to the catheter. It says nothing about the other side, which is the second element, stabilization element, or second engagement element. Even if we assume that the other end is the engagement element. Well, what about meseta? Doesn't that fill some of the gaps that you're pointing out? Which one? The second reference that the board relies on. Did I mispronounce meseta? Well, the second reference, the distinction is that it is preformed. It's not preattached, meaning the protrusion that comes out of it, right, I think it's called this shape, you know, called 72 or 68. This is basically preformed. It's not preattached. Preattached, if the specification makes it very clear, should be construed as something that's otherwise not a part of the inner surface. And in that reference, meseta, that protrusion which is used to do the locking is clearly preformed, not, for example, preattached. Well, what's your response to the board's, essentially your board did a KSR argument that it would have been, even if Bayer was talking about a mechanism that was not within the channel, that there are only two different places that you could put such a mechanism, and why wouldn't it be obvious to try doing it there? You know, this actually refers to the notion of reasonable expectation of success. First is that it's actually on the examiner's or on the board's end to have the burden to establish that, because MPEP clearly specified that. I think it's MPEP 2143. And second, the case law also specified that as well, in Ray Stephan, which is the recent case. You see, here's the thing, right, is that the teaching clearly shows that the only thing within the grasp of those doing the art is to put something, namely stabilization element on the end of the catheter. So putting something on the, put a stabilization element in this retroflex contest, on the other end, which is the second engagement element or second stabilization element, is now within the grasp of those doing the art. And the board made a quantum leap without any evidence, much less substantial evidence, because the only evidence that they had is this paragraph plus the dictionary meaning of engagement. And in fact, even with regard to engagement, you can have an engagement without any pre-attached device. For example, in the specification, I believe it's, let me see, figure 40, basically has this device that was set to engage with the surface of the wall without any pre-attached element. So are you saying that the board, in the context of examination, would always have to have expert testimony before it could conclude that some mechanical operation might be within the can of, one of skill in the art? You know, I don't care whether it's expert testimony so long as they have evidence for that. There's no evidence for that in this contest, in this configuration. You know, basically, there could be a myriad of different ways of stabilizing it. Like, for example, it's shown already, right? Balloon, spring, guide wire, right? There could be thousands of them, right? Except that those doing the art, they only grasp that those things can only be put on the side of the catheter. And nobody in the prior even mentioned the possibility, much less the viability, of putting that pre-attached device on the other end of the catheter. Okay, go on. Your Honor, I think that's pretty much the issues left in this case. So, you know, if you have no further questions, I can yield the podium to the other side. Okay. Okay, thank you. Ms. Lateef. Good morning, Your Honors. May it please the Court. Ratnakar's claimed invention is anticipated by Baer, or alternatively obvious in view of Baer, or obvious in the view, obvious over the combination of Baer and view of Mesita. I have a little problem with the anticipation conclusion, because the board simply said, or the examiner simply said, it would inherently work this way. And, you know, putting aside inherency as a difficult concept, this isn't the kind of thing where you can tell that it would automatically work that way. So I think you ought to focus on obviousness. Sure, I can do that, Your Honor. Looking at the obviousness rejection, let's first look at obviousness in view of Baer. What the examiner and the board found was that there are only two possible locations where you could put Baer's engagement arrangements elements, and that those locations would either be on the catheter or on the inside of the hollow channel. And as a result of that, a person of ordinary skill in the art would look and say, okay, within my technical grasp, I can see that there's only these two places, and therefore under KSR, it would be obvious. What's the argument about where along the mechanism it would be placed? So Baer teaches that it's on the catheter on the distal end, and that doesn't negate the argument that a person of ordinary skill in the art could find it obvious to put it in the hollow channel to stabilize. It doesn't really matter where you put it as long as you're able to stabilize the catheter. So I'm not really sure the point of arguing about where it's located, because the whole point is that you're trying to stabilize the catheter in this channel. So you're either going to put it on the catheter, or you're going to put engagement means on the catheter, put engagement means on the hollow channel, such that it remains stabilized. But you would agree that all the other means that are expressly disclosed in Baer are all outside? Yes, but the examiner and the board looked at those as alternatives. So they're not examples. So they're looking at these engagement arrangements. They're not, I'm sorry, engagement mechanical arrangements. They're not looking at these springs or the balloons. Those are separate. They based their rejection on that particular type of stabilizing element. And so when you're looking at that particular type of stabilizing element, there's only two places it can be to keep the catheter inside the hollow channel. And a person of ordinary skill in the art would recognize that. And under KSR, that would make it obvious. And did you have a question? I was going to say, so what's the value of MACEDA to the board's analysis? So MACEDA comes in to the extent, MACEDA has a specific lock and key arrangement. So you have Baer, which teaches stabilization elements in general, and then MACEDA, but it doesn't really tell you how those engagement elements come together. MACEDA comes along and tells you that they lock. So you have a member on one side of the catheter and a member inside the hollow channel that creates this locking movement so that the catheter cannot move. And so when you combine Baer with MACEDA, Ratnakar's claimed invention, again, would be obvious. There is this argument about whether or not something can be preformed or not, because MACEDA does have a preformed element included in it. But if you look at Ratnakar's specification and their claimed invention, there is an element there that's also preformed. And it's still, the claims don't make a distinction about whether or not attached has to be something separate or whether or not it can be formed as a part of the hollow channel. And for example, your honors, if you indulge me, if you looked at APPX 225 figure 42A, you'll see what I'm talking about. There's the mating contracture 421 in Ratnakar's claimed invention. And it is preformed just like element 72 in MACEDA. Well, what about his contention that MACEDA doesn't teach the element because the locking element is an integral part? And you say preformed, but he says it can't be separated from. Right, so it's sort of the same argument. There's nothing in the claim language or in the specification to show that that makes a patentable distinction. Ratnakar's own claimed invention has, in that figure that I'm showing you, a mating contraption that is an integral part of the hollow channel. So again, I'm looking at APPX 225, looking at figure 42A, and if you look at mating contraption 421, this is Ratnakar's invention. That is an integral part of the hollow channel, just like MACEDA's element 72 is an integral part of the hollow channel. And the board and the examiner made that finding and said it works exactly the same way. There's nothing different here. Is it correct that some claims were allowed? Do you know? They were not. My understanding is they weren't allowed. They weren't argued going forward. There were some projections that Ratnakar did not feel the need to address or argue, Your Honor. And I can tell you what those are if you want them specifically. I just need to take a look. Were you interested in what those claims were, Your Honor? I don't know. We'll ask Mr. Ma. They were withdrawn, right? Yes. I was trying to recall if they were withdrawn or if he just wasn't contesting them. So it was claims 41 and claims 61. Right. Those aren't contested and then what, 62 through 66 were withdrawn, right? Oh, yes. Yes, Your Honor. My apologies. Yes, that's right. So if there are no further questions, I just want to reiterate with respect to obviousness, Your Honor, that Ratnakar's claim to invention is obvious in view of Bayer as well as in the combination of Bayer and Maceda. And Ratnakar has shown no errors that the board has made. So I respectfully ask that this court affirm the board's decision. Thank you. Thank you. Mr. Ma? Hi, Your Honor. I just want to address the issue with respect to pre-attest versus pre-formed. You know, we can still claim that term not in a vacuum, but has to be within the specification because the case law established that the specification, the teachings in the specification is the single best guide. And also, in Ray Smith's case, the court emphasized that the construing of a claim term has to correspond to the intention of the inventor. Right. In this case, my colleague mentioned figure 42A, right? In fact, figure 38, figure 41A, figure 41B, figure 42A, figure 42B, when they describe the invention, especially this contraption, they all use the term attached. And throughout the specification, right, they use the term catheter. So it's pretty clear what the inventor meant with regard to the term pre-attached or attached, meaning that it's something not otherwise on the catheter. Because otherwise, the specification would have said, okay, this catheter is pre-formed to have this and that, right? But in Masida, it's throughout the whole specification of Masida, right, it's always, oh, this thing is part of the surface so that this locking mechanism can be advantageously implemented, you know, when they're made together, right? So there is a big difference between pre-formed versus pre-attached in this contest. And the strength of us, of my client, is Philips, which is the single best guy case law, and the Ingray-Smith, which is the correspondent with case law. And I also want to address the KSR my colleague mentioned. KSR specifically said you've got to have a specific reason to assert that it's obvious. Based on my understanding throughout the whole record, there is no specific reason articulated on why those skill in the art will be motivated to somehow not putting the stabilization element on the catheter side, but all of a sudden put on the other side, which is the inner surface of the holy channel. You know, they had an opportunity to do that, but clearly they chose not to do that. So that basically shows that those skill in the art is now within the grasp of our claim language. So if you have no further questions, you know, I'll just give the podium. Thank you. Thank you both. The case is taken under submission.